UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Rebecca Hicks,**

       Plaintiff,

vs.

**DEMAND FOR JURY TRIAL**
Case No. 21-            -CD
Honorable:

**Lakeview Public Schools,**

       Defendants.

_____

**GASIOREK, MORGAN, GRECO,**
**McCAULEY & KOTZIAN, P.C.**
BY:  RAY CAREY (P 33266)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(T) 248-865-0001 (F) 248-865-0002
Rcarey@gmgmklaw.com

## COMPLAINT AND JURY DEMAND

Plaintiff Rebecca Hicks ("Plaintiff" or "Ms. Hicks"), by her attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN P.C., for her Complaint against Defendant Lakeview Public Schools ("Defendant" or "Lakeview"), states as follows:

1. This is an action for discrimination on account of sex with respect to compensation by Lakeview against Ms. Hicks in violation of the Equal Pay Act

of 1963, 29 U.S.C. § 206, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2101, *et seq.*

## PARTIES

2. Plaintiff Rebecca Hicks is an individual who currently resides in Harrison Township, County of Macomb, State of Michigan.

3. Defendant Lakeview Public Schools is a public school district duly organized under the laws of the State of Michigan located in St. Clair Shores, County of Macomb, State of Michigan.

## JURISDICTION AND VENUE

4. The amount in controversy exceeds $75,000 exclusive of interest and costs.

5. This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 (federal question jurisdiction) and 29 USC §216(b) (equal pay).

6. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims for ELCRA violations.

7. This Court has personal jurisdiction over Defendant because it maintains offices and facilities and engage in regular and systematic business and other activities within the Eastern District of Michigan and the acts

attributed to Defendant that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

8. Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides and Defendant is located within the Eastern District of Michigan and the events that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

9. Venue also is convenient in this judicial district.

## COMMON FACTUAL ALLEGATIONS

10. Ms. Hicks is a female who graduated from Michigan State University with a Bachelor of Arts Degree in education in 2002 and with a Masters of Arts Degree in curriculum and instruction in 2007.

11. Ms. Hicks received a Michigan Teaching Certificate from the Michigan Department of Education in 2003, with an Elementary Endorsement that certifies her to teach all subjects to students in grades kindergarten through grade 8 in self-contained classrooms and with a Middle School Endorsement that certifies her to teach General Science, Earth/Space Science, and English to students in grades 6 through 8.

12. Ms. Hicks was employed during the period between September 2004, and June, 2010, at the George Crockett Academy in Detroit, MI, a public school charter academy, where she was a Science Teacher for Grades 6 through

3

8, a 6th grade teacher, School Improvement Team Chair, Middle School Lead Teacher, and Science Curriculum Committee Chair ; and during the period between September, 2011, and June, 2012, at the Bradford Academy in Southfield, MI, a public school charter academy, where she was a Science Teacher for Grade 6 and Middle School Lead Mentor teacher.

13. During the period between October, 2012, and September, 2016, Ms. Hicks also was an instructional coach and professional development provider for school faculty and other staff at Bridgeport Middle School and High School, Saginaw, MI; Dearborn Academy, Detroit, MI; Michigan Technical Academy Elementary School, Detroit, MI ; Dove Academy, Detroit, MI; and Mumford High School, Detroit, MI, successfully designed and implemented school curricula, and planned and facilitated professional trainings, workshops and presentations for various Michigan public school districts, schools, academies and universities.

14. Ms. Hicks was hired by Lakeview in September, 2016, as a teacher in its middle school where she taught science to Lakeview middle school students.

15. Ms. Hicks was employed by Lakeview and taught science to Lakeview middle school students from September, 2016, until September, 2021, when she terminated her employment with Lakeview.

16. The terms and conditions of employment applicable to Ms. Hicks and other teachers employed by Lakeview during the period between September, 2016, until September, 2021, were governed by collective bargaining agreements between the Lakeview Board of Education and Lakeview teachers represented by MEA/NEA Local I ("Association").

17. The collective bargaining agreements that were in effect during the period between September, 2016, until September, 2021, each contain provisions pertaining to the salaries to be paid to Lakeview teachers during the school.

18. Article III in each collective bargaining agreement specifies that the salaries for which teachers were eligible were set forth in the Schedule A- Salary Guide to each agreement.

19. In accordance with Article III and the Schedule- A Salary Guide to each collective bargaining agreement, all Lakeview teachers regardless of whether they taught at the elementary, middle school, or high school level were to be treated the same with respect to compensation.

20. In accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement, all Lakeview elementary, middle school, and high school teaching positions were deemed to require equal skill, effort, and responsibility and to be performed under similar working conditions.

21. In accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement, all Lakeview elementary, middle school, and high school teachers who were credited with the same years of Lakeview experience and had the same level of college and/or post college graduate education were to receive the same salary.

22. In accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement, the Lakeview Superintendent "may grant unlimited credit on the salary scale for teaching and related outside teaching experience."

23. During the course of the selection process for and after she received the offer of employment for the teaching position she accepted at Lakeview, Ms. Hicks requested of the applicable Lakeview hiring representatives that she be given credit for her 13 years of teaching and related experience for purposes of the salary for which she was to have become eligible in accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement.

24. Ms. Hick's was told by applicable Lakeview hiring representatives that all teachers hired from outside the district commence employment at Step 0 of the Schedule A- Salary Guide without exceptions and that her request was denied for this reason.

25. These representations were false.

26. Lakeview contemporaneously hired a male employee who has less years of public school teaching and related experience than Ms. Hicks for a high school teaching position and who, unlike Ms. Hicks, was given credit for his pre-Lakeview teaching and related experience for purposes of the salary for which he became eligible in accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement.

27. Upon information and belief, the male high school teacher was hired at Step 10 of the Schedule A- Salary Guide although Ms. Hicks had been hired at Step 0 and falsely advised that all teachers hired from outside the district commence employment at Step 0 of the Schedule A- Salary Guide without exceptions.

28. The Lakeview school board approved the hiring of and unequal and discriminatory compensation applicable to Ms. Hicks and the male high school teacher at the same board meeting.

29. Ms. Hicks later complained to the Association's president about Lakeview's unequal and discriminatory pay practices to no avail, and the Association's president advised her that she had no basis to file a grievance over Lakeview's unequal and discriminatory pay practices.

30. During the period between September, 2016, and September, 2021, Ms. Hicks was paid at least $ 30,000 per year less than the male high school teacher and other teachers compensated at Step 10 of the Schedule A-Salary Guide to each collective bargaining agreement although their teaching positions required no more skill, effort, and responsibility than Ms. Hicks' position and were performed under working conditions similar to those applicable to Ms. Hicks' position.

31. The male teacher hired at Step 10 thereafter received salary step increases based on his original step 10 rate while Ms. Hicks received salary step increases based on her original Step 0 rate during each year between September, 2016, and September, 2021, when she resigned from her Lakeview employment because of its discriminatory pay practices.

32. Lakeview has hired other male employees as teachers since September, 2016, who have less education and years of teaching and related experience than Ms. Hicks and who, unlike Ms. Hicks, were given credit for their pre-Lakeview teaching and related experience for purposes of the salaries for which they became eligible in accordance with Article III and the Schedule A-Salary Guide to each collective bargaining agreement.

33. Upon information and belief, during the 2018 through 2021 school years, one or more male teachers was hired at Step 5 of the Schedule A-

Salary Guide although Ms. Hicks at the time was at Step 2 and had been falsely advised that all teachers hired from outside the district commence employment at Step 0 of the Schedule A- Salary Guide without exceptions.

34. The Lakeview school board approved the hiring of and unequal and discriminatory compensation applicable to each of these male teachers at school board meetings during the 2018 through 2021 school years.

35. Ms. Hicks later complained to her middle school principal and the Association's president to no avail about Lakeview's continuing unequal and discriminatory pay practices, including its previous hiring the male high school teacher at Step 10 and the more recent hiring of at least one male teacher at Step 5 of the Schedule A- Salary Guide, and the Association's president again advised her that she had no basis to file a grievance over Lakeview's unequal and discriminatory pay practices.

36. During the period between September, 2018, and September, 2021, Ms. Hick's was paid at least $ 10,000 per year less than the male high school teacher and other teachers compensated at Step 5 of the Schedule A- Salary Guide to each collective bargaining agreement although their teaching positions required no more skill, effort, and responsibility than Ms. Hicks' position and were performed under working conditions similar to those applicable to Ms. Hicks' position.

9

37. The male teacher hired at Step 5 thereafter received salary step increases based on his original step 5 rate while Ms. Hicks received salary step increases based on her original Step 0 rate during each year between September, 2016, and September, 2021, when she resigned from her Lakeview employment because of its discriminatory pay practices.

38. During the period between September, 2016, and September, 2021, Ms. Hick's was paid at least $ 40,000 per year less than male and other teachers employed by Defendant who had equal or less education and years of teaching and related experience than her for purposes of the salary for which teachers were eligible in accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement although their teaching positions required no more skill, effort, and responsibility than Ms. Hicks' position and were performed under working conditions similar to those applicable to Ms. Hicks' position.

39. The male and other teachers thereafter received salary step increases based on their original, higher step rates while Ms. Hicks received salary step increases based on her original Step 0 rate during each year between September, 2016, and September, 2021, when she resigned from her Lakeview employment because of its discriminatory pay practices.

40. Ms. Hicks was the victim of Lakeview's pattern and practices of unequal pay for women and discrimination against her and other female teachers on account of their sex during each school year beginning in September, 2016, and until September, 2021, when salaries and Schedule A- Salary Guide step increases for Ms. Hicks and other Lakeview teachers were determined.

41. Ms. Hicks was the victim of Lakeview's pattern and practices of unequal pay for women and discrimination against her and other female teachers on account of their sex during each school year beginning in September, 2016, and until September, 2021, each time Lakeview tendered a paycheck to Ms. Hicks.

42. Lakeview wrongfully refused since September, 2016, to treat Ms. Hicks the same as male teachers who had equal or less education and/or years of teaching and related experience than her for purposes of the salary for which she was eligible in accordance with Article III and the Schedule A- Salary to each collective bargaining agreement because of her sex.

43. Lakeview's purported reasons for the different treatment of Ms. Hicks and male teachers with respect to their compensation are not true and are a pre-text for discrimination against her on account of her sex.

44. Ms. Hicks resigned from her lakeview employment because of Lakeview's pattern and practices of unequal pay for women and discrimination against her and other female teachers on account of their sex during each school year beginning in September, 2016, and until September, 2021.

### COUNT I – VIOLATION OF THE EQUAL PAY ACT OF 1963

45. Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

46. At all times relevant, Defendant was an "employer" of and "employ[ed") Plaintiff as these terms are defined by section 203(d) and (g) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (d) and (g).

47. At all times relevant, Plaintiff was an "employee" of Defendant as this term is defined by section 203(e) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (e).

48. At all times relevant, Defendant's superintendent and middle school and other principals were each a "person" as this term is defined by section 203(a) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (a).

49. The Equal Pay Act of 1963 ("EPA), 29 U.S.C. §206(d) is an amendment to the Fair Labor Standards Act and prohibits "employer[s] … [from] discriminat[ing] … on the basis of sex by paying wages to employees […] at a rate less than the rate [paid] to employees of the opposite sex […] for equal work on jobs [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions[.]"

50. The work performed by Plaintiff while she was employed as a teacher by Defendant was at least equal to the work performed by all other male teachers employed by Defendant, especially male teachers with equal or less education and years of teaching and related experience.

51. Plaintiff's job as a teacher required skill, effort, and responsibility at least equal to the jobs performed by all other male teachers employed by Defendant, especially male teachers with equal or less education and years of teaching and related experience.

52. Plaintiff's job as a teacher was performed under similar working conditions as the jobs performed by all other male teachers employed by Defendant, especially male teachers with equal or less education and years of teaching and related experience.

53. Defendant violated Plaintiff's rights under the EPA by:

a. paying Plaintiff less than male teachers who had equal or less education and years of teaching and related experience than her and who, unlike Plaintiff, were given credit for their pre-Lakeview teaching and related experience for purposes of the salary for which they were eligible in accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement; and

b. paying Plaintiff less than male and all other teachers employed by Defendant who had equal or less education and years of teaching and related experience than her for purposes of the salary for which teachers were eligible in accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement.

54.     As a direct and proximate result of Defendant's aforementioned intentional violation of Plaintiff's civil rights as set forth in the EPA, Plaintiff has sustained damages for lost pay to which she is entitled; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

### COUNT II – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – SEX DISCRIMINATION

55.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

56. At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

57. At all times relevant, Defendant's superintendent and middle school and other principals were each a "person" as this term is defined by section 103(g) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"), *see* MCL §37.2103(g), and each was an agent of Defendant with respect to terms and conditions of Plaintiff's former employment with Defendant.

58. At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against her based on her sex.

59. Defendant violated Plaintiff's rights under the ELCRA by:

   a. paying Plaintiff less than male teachers who had equal, comparable, or less education and years of teaching and related experience than her and who, unlike Plaintiff, were given credit for their pre-Lakeview teaching and related experience for purposes of the salary for which they were eligible in accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement; and

   b. paying Plaintiff less than male and all other teachers employed by Defendant who had equal, comparable or less education and years of teaching and related experience than her for purposes of the salary for which teachers were eligible in accordance with Article III and the Schedule A- Salary Guide to each collective bargaining agreement.

15

60. As a direct and proximate result of Defendant's aforementioned intentional violation of Plaintiff's civil rights as set forth in the ELCRA, Plaintiff has sustained damages for lost pay to which she is entitled; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**WHEREFORE,** Plaintiff requests that this Court enter an Order and Judgment against Defendant that awards to Plaintiff:

a. Compensatory damages in an amount in excess of $75,000.00 to which she is found to be entitled, inclusive of back pay and other compensation lost by Plaintiff due to pay discrimination;

b. Liquidated damages for its violation of the Equal Pay Act of 1963;

c. Compensatory and exemplary damages for violation of Plaintiff's rights under the EPA and ELCRA and for mental anguish, emotional distress, humiliation and injury to her reputation;

d. Reasonable attorney fees and costs, including expert witness fees, and pre and post judgment interest;

e. Injunctive or equitable relief to foreclose further violations of the ELCRA and EPA; and

g. Such other legal or equitable relief as this Court deems appropriate.

                                              Respectfully submitted,

                                              **GASIOREK, MORGAN, GRECO,**
                                              **McCAULEY & KOTZIAN, P.C.**

                                              */s/ Raymond J. Carey*
                                              **Raymond J. Carey (P33266)**
                                              Attorneys for Plaintiff
                                              30500 Northwestern Hwy., Ste. 425
                                              Farmington Hills, MI  48334
                                              (248) 865-0001
DATE: October 26, 2021                   rcarey@gmgmklaw.com


## DEMAND FOR TRIAL BY JURY

Plaintiff Rebecca Hicks, by her attorneys, GASIOREK, MORGAN, GRECO, MCCAULEY & KOTZIAN P.C., demands a trial by Jury.

                                              Respectfully submitted,

                                              **GASIOREK, MORGAN, GRECO,**
                                              **MCCAULEY & KOTZIAN, P.C.**

                                      BY:    */s/ Raymond J. Carey*
                                                      Raymond J. Carey (P33266)
                                                      Attorney for Plaintiff
                                                      30500 Northwestern Hwy, Ste. 425
                                                      Farmington Hills, MI 48334
                                                      (248) 865-0001
                                                      rcarey@gmgmklaw.com
Date:  October 26, 2021